**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

SCOTT BABIAK, individually and on behalf
of all others similarly situated,

       *Plaintiff*,

  v.

MIZUHO BANK, LTD.,

       *Defendant*.

Case No. 1:18-cv-352-LO/JFA

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION...................................................................................................................1

FACTUAL BACKGROUND ...............................................................................................2

    *The Mt. Gox Exchange* ....................................................................................................2

    *Plaintiff Babiak's Experience* ........................................................................................5

    *The Northern District of Illinois Litigation* .....................................................................5

ARGUMENT.......................................................................................................................7

    **I.**        **This Court Has Personal Jurisdiction Over Mizuho** ...........................................7

    **II.**      **The Complaint States a Claim for Tortious Interference
With Contract**...................................................................................................11

        *A.*    *Mizuho Had Constructive Knowledge of Babiak's Contract
With Mt. Gox.* ........................................................................................12

        *B.*    *Mizuho Intended to Interfere With Babiak's Contract* ..................................14

        *C.*    *Mizuho's Stopping Withdrawals Caused a Breach of Contract,
Injuring Babiak* .....................................................................................15

        *D.*    *Mizuho's Conduct Was Unjustified* ...............................................................17

CONCLUSION ...................................................................................................................19

## TABLE OF AUTHORITIES

**Cases**

*Acorda Therapeutics Inc. v. Mylan Pharm. Inc.*,
    817 F.3d 755 (Fed. Cir. 2016) ................................................................. 8, 9, 10

*AdvanFort Co. v. Mar. Exec., LLC*,
    No. 1:15-CV-220, 2015 WL 4603090 (E.D. Va. July 28, 2015) ...................................... 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................... 11

*Bochan v. La Fontaine*,
    68 F. Supp. 2d 692 (E.D. Va. 1999) ................................................................. 8

*Bristol-Myers Squibb Co. v. Superior Court of California*,
    137 S. Ct. 1773 (2017) .................................................................................. 6

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ..................................................................................... 8

*Calder v. Jones*,
    465 U.S. 783 (1984) ..................................................................................... 8

*Commerce Funding Corp. v. Worldwide Sec. Servs. Corp.*,
    249 F.3d 204 (4th Cir. 2001) ................................................................... 15, 16

*Consulting Eng'rs Corp. v. Geometric Ltd.*,
    561 F.3d 273 (4th Cir. 2009) ......................................................................... 7

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*,
    514 F.3d 1063 (10th Cir. 2008) ................................................................ 8, 10

*Dunn, McCormack & MacPherson v. Connolly*,
    708 S.E.2d 867 (Va. 2011) ................................................................ 12, 17, 19

*Germain v. Shearin*,
    725 F. App'x 225 (4th Cir. 2018) .................................................................. 11

*Gomez v. Toledo*,
    446 U.S. 635 (1980) ................................................................................ 16, 17

*Goodman v. Praxair, Inc.*,
    94 F.3d 458 (4th Cir. 2007) ......................................................................... 16

*Greene v. Mizuho Bank, Ltd.*,
   169 F. Supp. 3d 855 (N.D. Ill. 2016) ..................................................... 6, 10, 11

*Greene v. Mizuho Bank, Ltd.*,
   206 F. Supp. 3d 1362 (N.D. Ill. 2016) ..................................................... *passim*

*Greene v. Mizuho Bank, Ltd.*,
   289 F. Supp. 3d 870 (N.D. Ill. 2017) ............................................................. 6

*Greene v. Mizuho Bank, Ltd.*,
   No. 1:14-cv-01437 (N.D. Ill.) ......................................................................6

*Greene v. Mizuho Bank, Ltd.*,
   No. 14 C 01437, 2018 WL 2735112 (N.D. Ill. June 7, 2018) .......................... 6

*In re: MtGox Co., Ltd.*,
   No. 14-31229-sgj-15 (Bankr. N.D. Te.) ......................................................... 3

*Katrina Michelle Banks v. Takkt Am. Holding, Inc.*,
   No. 2:16CV542, 2017 WL 4324699 (E.D. Va. Sept. 28, 2017) ....................... 10

*Keeton v. Hustler Magazine Inc.*,
   465 U.S. 770 (1984) ................................................................................... 11

*Lack v. Mizuho Bank, Ltd.*,
   No. 2:18-cv-00617-RGK-GJS (C.D. Cal.) ................................................ 10, 17

*Leichling v. Honeywell Int'l, Inc.*,
   842 F.3d 848 (4th Cir. 2016) ...................................................................... 17

*Leonard v. Bed, Bath & Beyond, Inc.*,
   No. 5:15-CV-00284-F, 2016 WL 81262 (E.D.N.C. Jan. 7, 2016)..................... 8

*Mid-Continent Tel. Corp. v. Home Tel. Co.*,
   319 F. Supp. 1176 (N.D. Miss. 1970).............................................................14

*Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Corp.*,
   65 F.3d 1113 (4th Cir. 1995) ................................................................. 15, 16

*OpenRisk, LLC v. Microstrategy Servs. Corp.*,
   876 F.3d 518 (4th Cir. 2017) ...................................................................... 15

*Payton v. Kale Realty*,
   No. 13 C 8002, 2014 WL 4214917 (N.D. Ill. Aug. 26, 2014)..........................10

*Pennsylvania by Shapiro v. Think Fin., Inc.*,
    No. 14-CV-7139, 2018 WL 637656 (E.D. Pa. Jan. 31, 2018) .................................... 9, 10

*Prudential Real Estate Affiliates, Inc. v. Long & Foster Real Estate, Inc.*,
    208 F.3d 210 (4th Cir. 2000) .................................................................................12, 14

*Rappahannock Pistol & Rifle Club, Inc. v. Bennett*,
    546 S.E.2d 440 (Va. 2001)........................................................................................ 12

*Storey v. Patient First Corp.*,
    207 F. Supp. 2d 431 (E.D. Va. 2002) ........................................................................ 18

*Synthes, Inc. v. Emerge Med., Inc.*,
    25 F. Supp. 3d 617 (E.D. Pa. 2014) .......................................................................... 14

*Tazewell Oil Co. v. United Virginia Bank/Crestar Bank*,
    413 S.E.2d 611 (Va. 1992).......................................................................................... 12

*Touchcom, Inc. v. Bereskin & Parr*,
    790 F. Supp. 2d 435 (E.D. Va. 2011) .......................................................................... 7

*Universal Leather, LLC v. Koro AR, S.A.*,
    773 F.3d 553 (4th Cir. 2014) ....................................................................................... 7

*Walden v. Fiore*,
    134 S. Ct. 1115 (2013)......................................................................................... 7, 8, 9

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
    780 F.3d 597 (4th Cir. 2015) ..................................................................................... 11

## Rules and Statutory Provisions

31 C.F.R. § 103.33(g)(1)....................................................................................................... 3

Fed. R. Civ. P. 12 ...................................................................................................... 2, 11, 16

## Other Authorities

Restatement (Second) of Torts § 433............................................................................16

Restatement (Second) of Torts § 766............................................................................ *passim*

Restatement (Second) of Torts § 774............................................................................15

## INTRODUCTION

This case arises from the collapse of Mt. Gox, once the world's largest bitcoin exchange. Mt. Gox shuttered without warning in February 2014, taking with it millions (if not hundreds of millions) of dollars' worth of users' bitcoin and cash. There is plenty of blame for these losses to go around, and some may be laid at the feet of Mt. Gox's erstwhile CEO Mark Karpeles. But the actions of defendant Mizuho Bank, Ltd. ("Mizuho"), Mt. Gox's banking partner for United States users, also led to substantial losses among prospective Mt. Gox investors. Beginning in June 2013, Mizuho began a campaign to significantly disrupt Mt. Gox's ability to serve American users by, among other things, unilaterally refusing to process withdrawals for U.S. users who already held bitcoin or money on the exchange. Mizuho hoped that by doing so, Mt. Gox would be forced to find another bank to service U.S. investors.

Mizuho shielded these actions from public scrutiny and withheld critical information from thousands of Americans. This included Plaintiff Scott Babiak, who transferred bitcoin onto the exchange, sold some of it for $2,500 in U.S. dollars (called "fiat currency" to distinguish it from "cryptocurrency"), and unsuccessfully tried to withdraw that money three times before the exchange's collapse. Babiak believed, according to the terms of his contract with Mt. Gox, that he would be able to get his money out of the exchange on request, but because of Mizuho's actions Mt. Gox could not transmit the $2,500 to Babiak when he asked for it. Mizuho's actions—which have already been found by one federal judge to state a claim for tortious interference with the contracts between Mt. Gox and its customers in the United States, *Greene, et al. v. Mizuho Bank, Ltd., et al.*, 206 F. Supp. 3d 1362 (N.D. Ill. 2016)—give rise to Babiak's claim against the bank for intentional interference with contract.

Mizuho now moves to dismiss the complaint under Federal Rule Of Civil Procedure 12(b)(2) and 12(b)(6), arguing that the Court lacks personal jurisdiction over it and that Babiak's complaint fails to state a claim for relief. The Court should reject these arguments.

First, Mizuho suggests that the Court lacks specific personal jurisdiction over it because the conduct underlying Babiak's claims occurred in Japan. But Mizuho only interfered with Babiak's contract with Mt. Gox *because* of his Virginia residency—*i.e.*, as part of its directed efforts to undermine the relationship between Mt. Gox and its American customers—making its conduct purposefully directed at Virginia. In the particular context of a tortious interference with contract claim, this is sufficient to establish specific personal jurisdiction.

Second, Mizuho contends that that the Complaint fails to state a claim for tortious interference against Mizuho because Babiak does not allege that Mizuho was aware of his contract with Mt. Gox, took an intentional act to interfere with that contract that caused Mt. Gox's breach (and attendant damages to Babiak), or employed improper methods in causing Mt. Gox's breach. These arguments are largely ones for later in the case. Even so, Babiak alleges Mizuho's awareness of the relevant contract, that he was damaged specifically because of Mizuho's intentional halting of withdrawals from Mt. Gox (and concealment of that fact), and that Mizuho's conduct was improper, unethical, and arguably fraudulent.

Given these allegations, the Court should deny Mizuho's motion to dismiss in its entirety.

## FACTUAL BACKGROUND

### The Mt. Gox Exchange

Mt. Gox was a platform for buying and selling bitcoin (a "bitcoin exchange") founded in 2009, owned and operated by Mark Karpeles. (Dkt. 1, "Compl." ¶¶ 8, 13.) It once claimed to be the "world's most established Bitcoin exchange." (*Id.* ¶ 8.) To use the exchange, users had to create

an account at www.mtgox.com and agree to Mt. Gox's Terms of Use. (*Id.* ¶ 9.) In the Terms of Use, Mt. Gox pledged to "hold all monetary sums and all Bitcoins deposited" by the user on the user's behalf, and make a user's funds available to them on demand. (*Id.*) To purchase or sell bitcoin, users could either transfer bitcoins into their Mt. Gox accounts or wire money to those accounts from a bank. (*Id.* ¶ 11.)

Defendant Mizuho, a Japanese bank that conducts business worldwide, was Mt. Gox's banking partner responsible for facilitating international cash wire transfers into and out of Mt. Gox. (*Id.* ¶ 17.) Mizuho was indispensable to Mt. Gox's functioning because the company was, as of mid-2013, the exclusive processor of bank deposits and withdrawals made for thousands of U.S.-based Mt. Gox users. (*Id.* ¶ 20; *In re: MtGox Co., Ltd.*, No. 14-31229-sgj-15 (Bankr. N.D. Tex.), Declaration of Kobyashi in Support of Petition for Recognition, dkt. 127 at ¶ 24, attached hereto as Exhibit A ("I currently have information on the location of approximately 80,000 customers … approximately 30,701 customers are located in the United States.").) Mizuho received a service fee from users on each transaction into or out of the exchange. (Compl. ¶ 26.)

Mizuho was aware of Mt. Gox's contractual relationship with its customers in the United States, based on the nature of its work for the exchange and Mt. Gox's public Terms of Use. Wire transfers from users into the exchange, sent to Mizuho, designated Mt. Gox as the beneficiary and Mizuho as the beneficiary's bank; they also included Mt. Gox users' account numbers and address information. (*Id.* ¶¶ 18–19; *see also* 31 C.F.R. § 103.33(g)(1).) To withdraw funds from Mt. Gox, users had to submit requests to withdraw funds through their online Mt. Gox account. (Compl. ¶ 19.) Mt Gox compiled the requests it received (including the user's personal and banking information), provided the requests to Mizuho for processing, and transferred the funds to the user's bank. (*Id.*)

Beginning in 2013, Mizuho grew concerned by Mt. Gox's growing transaction volumes, as well as reports that U.S. authorities were investigating the exchange for money laundering. (*Id.* ¶ 21.) It therefore sought to end the parties' relationship and distance itself from Mt. Gox and Karpeles. (*Id.* ¶¶ 21–22.) Rather than terminate the relationship outright, however, Mizuho wanted Mt. Gox to be the one to officially sever the relationship. (*Id.* ¶ 22.) When Karpeles refused a direct request from the bank to close Mt. Gox's accounts, Mizuho moved to force Karpeles' hand, and, beginning in June 2013, Mizuho implemented a series of policies designed to frustrate Mt. Gox's business by disrupting and harming its customer relationships—particularly Mt. Gox's relationships with its customers in the United States. (*Id.* ¶¶ 22–23.) Most significantly, Mizuho stopped processing international wire withdrawals altogether—leaving American customers of the exchange high and dry, virtually unable to get money into or out of their Mt. Gox accounts. (*Id.* ¶¶ 2, 24–27.)

Mizuho actively concealed its new policies towards Mt. Gox from the public. In fact, it fostered the perception that the banking relationship was healthy by continuing to accept deposits into Mt. Gox users' accounts (including deposits it received from the United States), and collecting the attendant fees. (*Id.* ¶¶ 26–27.) Further, Mizuho pressured Mt. Gox to keep from revealing that it had stopped processing withdrawals, or that it wanted to terminate its relationship with Mt. Gox. (*Id.* ¶¶ 30–31.) Mizuho also knowingly remained silent as Mt. Gox falsely assured users, and the public, that any withdrawal issues were temporary, and failed to alert anyone that it had unilaterally stopped processing withdrawals from the exchange for Mt. Gox's American customers. (*Id.* ¶¶ 28–33.) For example, Mizuho said nothing as Karpeles falsely told the world that withdrawal delays were "due to a change in [Mt. Gox's] banking systems," creating a "back-log" of withdrawal requests. (*Id.* ¶ 28.) Mizuho maintained its silence, fearing both that public awareness of these new

practices might prompt a drop in deposits made through Mizuho (thus depriving the bank of transaction fees) and that Mizuho might have been viewed as contributing to Mt. Gox's problems (it was, after all, making it impossible for the exchange to service its customers in the United States) and thereby draw scrutiny from regulators. (*Id.* ¶¶ 26–27.) By accepting deposits while concealing its conduct concerning withdrawals, Mizuho directly contributed to the mistaken belief that Mt. Gox was operating normally, while making it virtually impossible for Mt. Gox to fulfill its contractual obligations to American customers. (*Id.* ¶¶ 2, 60.)

### Plaintiff Babiak's Experience

Mizuho's policies, and active concealment of them, directly affected Mt. Gox users like Plaintiff Scott Babiak. Babiak joined Mt. Gox in or around May 2013, transferring bitcoin purchased on another exchange to his account at Mt. Gox. (*Id.* ¶ 41.) Before joining, Babiak familiarized himself with Mt. Gox's representations about the exchange's security and reliability, as well as users' ability to withdraw or deposit bitcoins and/or fiat currency at any time. (*Id.*) Babiak later traded some of his bitcoin for currency and, on three separate occasions, attempted to withdraw $2,500 USD from his account in the fall of 2013. (*Id.* ¶¶ 43–45.) But Mizuho refused to process Babiak's withdrawal requests, per its policy, and Babiak was unable to withdraw the money and bitcoin from his Mt. Gox account before the exchange's collapse. (*Id.* ¶¶ 45–47.) He lost the entirety of his Mt. Gox holdings as a result. (*Id.* ¶¶ 47–48, 62.)

### The Northern District of Illinois Litigation

In late February 2014, Mt. Gox was forced to shut down and file for bankruptcy. (*Id.* ¶¶ 34–40.) Subsequently, individuals harmed by Mt. Gox's and Mizuho's conduct filed suit in the Northern District of Illinois on behalf of themselves and other U.S. Mt. Gox users. While the initial complaint did not originally name Mizuho or highlight the conduct described above, a subsequent

Second Amended Complaint—filed on April 17, 2015—both named Mizuho and connected its unilateral conduct to the loss of Mt. Gox users' deposits for the first time. *See Greene v. Mizuho Bank, Ltd.*, No. 1:14-cv-01437, dkt. 146 (N.D. Ill. Apr. 17, 2015), attached hereto as Exhibit B. Babiak is not a party to that case.

One of the original named plaintiffs in the *Greene* case, Gregory Greene, asserted a tortious interference claim against Mizuho. But unlike Plaintiff Babiak, he had not made an unfulfilled request to withdraw currency from the exchange. The claim was therefore dismissed. *Greene v. Mizuho Bank, Ltd.*, 169 F. Supp. 3d 855, 865 (N.D. Ill. 2016). Other putative lead plaintiffs asserted claims for fraud against Mizuho, alleging that Mizuho had concealed information material to the decision to invest in bitcoin on Mt. Gox, and that but for these actions the plaintiffs would not have deposited money at Mt. Gox. Later on in the litigation, an individual who *did* make an unsuccessful withdrawal request, Gregory Pearce, was added to the case, and Mizuho did not move to dismiss Pearce's claim on the merits. *Greene*, No. 1:14-cv-01437, dkt. 246, attached hereto as Exhibit C. The *Greene* court later dismissed Pearce's claim based on the Supreme Court's opinion in *Bristol-Myers Squibb Co. v. Superior Court of California*, which held that a resident named plaintiff's claim cannot support specific personal jurisdiction over a non-resident named plaintiff's claim. 137 S. Ct. 1773, 1780–82 (2017); *see also Greene v. Mizuho Bank, Ltd.*, 289 F. Supp. 3d 870, 974 (N.D. Ill. 2017).

On June 7, 2018, the Illinois court denied the remaining *Greene* plaintiff's motion for certification of a class of individuals who lost money during unsuccessful attempts to deposit currency into Mt. Gox accounts through Mizuho Bank. *Greene v. Mizuho Bank, Ltd.*, No. 14 C 1437, 2018 WL 2735112, at *7 (N.D. Ill. June 7, 2018). However, that motion was denied solely because the lead representative plaintiff, Anthony Motto, was deemed to be neither a typical nor

adequate class representative. *Id.* And while the *Greene* court acknowledged that it was not completely impossible for Mt. Gox users to move fiat currency out of the exchange, *id.* at *2, it noted that the underlying theory of liability alleged in *Greene* remained sound, *id.* at *5 (addressing *Greene*'s "straightforward theory of damages or detriment").

## ARGUMENT

### I.     This Court Has Personal Jurisdiction Over Mizuho.

When a motion to dismiss raises the issue of personal jurisdiction, a plaintiff must only make a *prima facie* showing of jurisdictional facts. *See Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). He may do so through the complaint, affidavits, and other competent evidence. *Id.* In making such a showing, a plaintiff is entitled to have all jurisdictional allegations taken as true and all factual disputes resolved in his favor. *Id.*

Virginia's long-arm statute authorizes this Court to exercise personal jurisdiction to the fullest extent due process allows. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). Federal courts may exercise specific personal jurisdiction over nonresident defendants when (1) they have purposefully directed their conduct towards a resident of the forum state, (2) the claims at issue arise from that conduct, and (3) exercising jurisdiction would not offend due process concerns.[1] *Walden v. Fiore*, 134 S. Ct. 1115, 1124 (2013); *AdvanFort Co. v. Mar. Exec., LLC*, No. 1:15-CV-220, 2015 WL 4603090, at *9 (E.D. Va. July 28, 2015). Just as the claims at issue must arise from a party's conduct, the nature of a given tort modifies the analysis of whether a party purposefully directed tort-related conduct at the forum. *See Walden*, 134 S. Ct.

---

[1]Mizuho does not argue that exercising personal jurisdiction would violate due process. As such, the argument is waived. *See Touchcom, Inc. v. Bereskin & Parr*, 790 F. Supp. 2d 435, 446 (E.D. Va. 2011), *on reconsideration in part* (July 7, 2011) ("Typically, courts will not consider an argument raised for the first time in a reply brief.") (citation omitted).

at 1123 (discussing *Calder v. Jones*, 465 U.S. 783 (1984), noting that the nature of reputation-based effects of libel justified specific jurisdiction over the out-of-state publisher who knowingly caused reputational injury in California); *Bochan v. La Fontaine*, 68 F. Supp. 2d 692, 697 (E.D. Va. 1999) (personal jurisdiction assessed in light of "the cause of action alleged"). And of course, a "single act" can support jurisdiction, in light of the specific claim at issue. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985).

Here, Babiak alleges that Mizuho directed tortious conduct at him based on his Virginia residency, as part of its larger scheme to interfere with the contracts between Mt. Gox and its customers in the United States. Babiak signed up for Mt. Gox in Virginia, relying on false statements about Mt. Gox's reliability—statements Mizuho allowed to be published without correction, in furtherance of its scheme to specifically harm Mt. Gox's American customers. (Compl. ¶¶ 28–33, 41, 48–49.) Mizuho implemented banking policies focused on interfering with the contracts between Mt. Gox and Babiak (and those like him), hoping pressure from Mt. Gox's customers in Virginia and other states would push Mt. Gox away. (*Id.* ¶¶ 23–27.) And when Babiak requested to withdraw funds from Mt. Gox—not once, but *three* times—the exchange was unable to process his transaction due to Mizuho's conduct. (*Id.* ¶¶ 44–45, 48, 59.) These allegations establish that Mizuho purposefully directed its acts towards Virginia, among other states. *See, e.g., Leonard v. Bed, Bath & Beyond, Inc.*, No. 5:15-CV-00284-F, 2016 WL 81262, at *2 (E.D.N.C. Jan. 7, 2016) (allegations that company was primary bottler of an injurious product to plaintiff known to sell that product nationwide, and sold the product in the forum, sufficient to confer jurisdiction); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1074 (10th Cir. 2008) (out-of-state conduct with goal of tortiously interfering with New Mexico contract supported specific personal jurisdiction); *Acorda Therapeutics Inc. v. Mylan Pharm. Inc.*, 817 F.3d 755, 759–

60 (Fed. Cir. 2016) (jurisdiction found even though planned in-state drug marketing, sales, and other planned actions were based on a regulatory filing made out-of-state); *Pennsylvania by Shapiro v. Think Fin., Inc.*, No. 14-CV-7139, 2018 WL 637656, at *5 (E.D. Pa. Jan. 31, 2018) (suit-related contacts sufficient to confer personal jurisdiction over defendant in Pennsylvania where party participated in payday loan scheme targeted at several states, including Pennsylvania).

Moreover, the "nature of the … tort" at issue here directly connects Mizuho's out-of-state conduct to Virginia. *Walden*, 134 S. Ct. at 1124. A claim for intentional interference starts with a contract; and here, the contract at issue was one between Mt. Gox and Babiak, a Virginian, and contemplated bitcoin-investing activities (including the withdrawal of currency from the exchange) Babiak would conduct from his home state. (Compl. ¶¶ 3, 10–12, 44–45, 57.) The claim also requires alleging harm due to the induced breach. Here, Babiak undeniably suffered harm from Mizuho's interference in Virginia when he lost all of his deposited funds. (*Id.* ¶¶ 47–48, 62.)

However, the most important allegation here is Babiak's claim that Mizuho intentionally and affirmatively interfered with his contract. Here, Mizuho's interference arose from Babiak's Virginia-based attempt to withdraw money from Mt. Gox. It is critical that Mizuho's refusal to process Babiak's withdrawal only took place *because of* his Virginia origin, as part of an overall plan to harm Mt. Gox's contracts with its American customers. Mizuho's silence—despite a duty to speak, *see Greene*, 206 F. Supp. 3d at 1374—was also part of this interfering conduct and a relevant jurisdictional contact, because Babiak "would not have opened his account with Mt. Gox" at all, or at least "would have taken immediate steps to" protect his holdings, had Mizuho spoken up. (Compl. ¶ 49).[2] Accordingly, in light of the specific tort at issue, this Court has personal

---

[2]     If Babiak had been one of Mt. Gox's Japanese customers, for example, Mizuho would not have targeted his contract..

jurisdiction over Mizuho. *See Dudnikov*, 514 F.3d at 1074; *Pennsylvania by Shapiro*, 2018 WL 637656, at *5; *Acorda Therapeutics Inc.*, 817 F.3d at 759–60 (finding personal jurisdiction due to nature of copyright infringement action despite lack of relevant in-state contacts); *Lack v. Mizuho Bank, Ltd.*, 2:18-cv-00617-RGK-GJS, dkt. 51, at 5 (C.D. Cal.), attached hereto as Exhibit D (nature of fraudulent concealment tort creates personal jurisdiction over Mizuho in California via bank's refusal to reveal information to plaintiff based on his residency).

For its part, Mizuho argues that all of its relevant actions here took place in Japan, without any direction at Virginia. (Dkt. 10, "Mot." at 6–9.) Not so. As discussed above, Mizuho's intentional conduct was directed at Virginia and Virginian Mt. Gox users like Babiak, as a part of its scheme to disrupt Mt. Gox's relationship with its American users. Mizuho intentionally acted to prevent Mt. Gox from fulfilling its contract with Babiak, including after he asked Mt. Gox to fulfill a withdrawal request three times. (Compl. ¶¶ 2, 23–24, 28–33, 44–45.) Mizuho did not process that request *solely* because Babiak's residency placed him within the scope of Mizuho's plan to force Mt. Gox to take its banking business elsewhere.[3] (*Id.* ¶¶ 2, 23–24.) Thus, Mizuho acted with Virginia in mind, and purposefully directed its intentional acts of interference and concealment at Virginia, among other states.

Mizuho also suggests that this issue was addressed—and resolved in Mizuho's favor—in *Greene*. (Mot. at 9 (citing *Greene*, 169 F. Supp. 3d at 863, 865).) But the relevant portion of the

---

[3]        That Mizuho's conduct was directed at users in other states does not detract from the Court's analysis of the bank's contacts with Virginia. *See, e.g.*, *Acorda Therapeutics*, 817 F.3d at 759 (the fact that drug marketing would also be directed at other states does not defeat jurisdiction in forum state); *Payton v. Kale Realty*, No. 13 C 8002, 2014 WL 4214917, at *4 (N.D. Ill. Aug. 26, 2014) (the fact that defendants aimed tortious products to residents in all fifty states did not render subsequent sales to Illinois residents to be fortuitous contacts); *Katrina Michelle Banks v. Takkt Am. Holding, Inc.*, No. 2:16CV542, 2017 WL 4324699, at *4 (E.D. Va. Sept. 28, 2017) (same, for Virginia).

*Greene* court's decision was premised on its conclusion that Mizuho had "no transactional contacts with [plaintiff Greene] at all" because Greene did not even attempt to withdraw fiat currency from Mt. Gox. 169 F. Supp. 3d at 865. In contrast, Babiak alleges the transactional interaction that Greene lacked: three separate attempts to withdraw money from the Mt. Gox exchange that, but for Mizuho's interference, would have been received and processed by the bank. (Compl. ¶¶ 44–45.) And because this attempted (but unsuccessful) transactional contact only arose *because of* Babiak's residency in Virginia, Babiak's claim succeeds where Greene's failed. *See Keeton v. Hustler Magazine Inc.*, 465 U.S. 770, 780 (1984) ("Plaintiff's residence may be the focus of the activities of the defendant out of which the suit arises" for purposes of personal jurisdiction).

## II.   The Complaint States a Claim for Tortious Interference With Contract.

Under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead sufficient factual matter to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating a motion to dismiss under Rule 12(b)(6), courts must accept all well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff.[4] *Germain v. Shearin*, 725 Fed. App'x 225, 227 (4th Cir. 2018). Detailed factual allegations are not required. *Ashcroft*, 556 U.S. at 678. Instead, a plaintiff need only allege sufficient factual matter to nudge their claim "across the line from conceivable to plausible." *Id.* at 680.

---

[4]   Mizuho asks the Court to consider a host of materials that are neither referenced in nor relied upon by Babiak's complaint. (Mot. at 2 n.1.) It also presents many of these materials for the truth of the matter asserted, (*see, e.g., id.* at 2-4), which is wholly improper on a Rule 12(b)(6) motion to dismiss. *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (citations and internal punctuation omitted) ("[C]ourts are limited to considering the sufficiency of allegations set forth in the complaint and the documents attached or incorporated into the complaint . . . . Consideration of extrinsic documents by a court during the pleading stage of litigation improperly converts the motion to dismiss into a motion for summary judgment.").

Virginia generally adheres to the Restatement (Second) of Torts approach to claims of intentional interference with contract. *See, e.g.*, *Dunn, McCormack & MacPherson v. Connolly*, 708 S.E.2d 867, 870 (Va. 2011) (discussing Restatement in analysis of tortious interference claim). To state a claim for intentional interference with contract under Virginia law, a party must allege (1) the existence of a valid contract, (2) defendant's awareness of the relationship, (3) intentional interference inducing or causing a breach or termination of the relationship, and (4) resultant damage to plaintiff. *See Rappahannock Pistol & Rifle Club, Inc. v. Bennett*, 546 S.E.2d 440, 443 (Va. 2001). Mizuho argues that the Complaint fails to allege intent to interfere with Babiak's contract, Mizuho's knowledge of that contract, or that Babiak suffered injury due to Mizuho's actions. (Mot. at 11.) In addition, Mizuho argues that the Complaint fails to allege that Mizuho employed improper methods in taking the actions it did—an additional element for contracts at-will. (*Id*.) Each contention fails.

### A.     *Mizuho Had Constructive Knowledge of Babiak's Contract With Mt. Gox.*

To start, Babiak alleges that Mizuho acted purposefully to harm his contractual relationship with Mt. Gox. To demonstrate intent on a tortious interference claim, a party must allege some awareness of the facts giving rise to the relevant contractual relationship. Restatement (Second) of Torts § 766 cmt. *i* ("It is not necessary that the actor appreciate the legal significance of the facts giving rise to the contractual duty, at least in the case of an express contract."); *Prudential Real Estate Affiliates, Inc. v. Long & Foster Real Estate, Inc.*, 208 F.3d 210 (4th Cir. 2000) (unpublished) (noting "willful blindness" as form of knowledge in tortious interference claim analyzed under § 766); *Tazewell Oil Co. v. United Virginia Bank/Crestar Bank*, 413 S.E.2d 611, 625, 627 (Va. 1992) (Whiting, J.) (concurring in part) ("*constructive* knowledge of a contract may

give rise to a claim for its tortious interference[,]" and enough that party "should have known" of its existence) (emphasis in original).

Here, Mizuho had reason to know (and should have known) about Babiak's contract with Mt. Gox. Mizuho knew that Mt. Gox was a bitcoin exchange operating for the benefit of its users, and sought to interfere with users' ability to withdraw funds precisely because Mt. Gox had promised them (including Americans) that they would be able to make withdrawals at any time. (Compl. ¶¶ 9, 17–20, 41.) Indeed, Mizuho experienced this first hand, given that—for an extended period of time—it operated as the key gateway into or out of the exchange for Mt. Gox's American users. (*Id.* ¶ 20.) Mizuho also had ready access to Mt. Gox's Terms of Use (the basis of users' contracts with the exchange, which were freely accessible online) throughout its relationship with Mt. Gox, on top of knowing (as Mt. Gox's banking partner) that Mt. Gox users moved funds into and out of the exchange through Mizuho-processed wire transfers. (*Id.* ¶¶ 9, 17–20.) And Mizuho had reason to know, as a sophisticated banking entity, that the ability to withdraw currency from the exchange was crucial to users' agreements with Mt. Gox, since bitcoin had little-to-no intrinsic value. Indeed, the articles Mizuho asks the Court to consider show that it had notice that Mt. Gox users wanted to withdraw their money, and viewed that ability as *crucial* to their bargain with Mt. Gox. (*Id.* ¶ 49; dkts. 11-1–11-7.) *See also Greene*, 206 F. Supp. 3d at 1375.) Thus, Mizuho was aware of the facts needed to put an entity of its sophistication on notice of the contractual relationship between Mt. Gox and its users, the nature of that relationship, and the effect its decision to unilaterally cut off withdrawals would have: preventing Mt. Gox from fulfilling a basic contractual obligation to users.

Mizuho broadly argues that, at the time of its alleged interference, it lacked knowledge of Babiak or his specific contract with Mt. Gox. (Mot. at 12.) But as discussed herein, Plaintiff alleges

that Mizuho's entire aim was to interfere with the contracts between Mt. Gox and its American (including Virginian) customers. That Mizuho may have remained willfully blind to the details of Babiak's specific contract is of no moment. *See Prudential Real Estate Affiliates, Inc.*, 208 F.3d 210 (acknowledging "willful blindness" as form of knowledge in tortious interference claim analyzed under § 766); Restatement (Second) of Torts § 766 cmt. *i* (citing as example of "knowledge" *Mid-Continent Tel. Corp. v. Home Tel. Co.*, 319 F. Supp. 1176, 1186 (N.D. Miss. 1970), where party unjustifiably "did not at any time inquire" or "investigate" into the existence of a contract); *Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 728 (E.D. Pa. 2014) (in tortious interference claim based on Restatement (Second), holding a genuine issue of material fact existed as to whether party knew of contract, where party generally aware "[a]ll employees" were required to sign non-disclosure agreements). Here, the *only* reason Mizuho avoided learning about Babiak's individual contract was because of its unilateral and intentional decision to stop processing withdrawal requests altogether. (Compl. ¶¶ 2, 25, 46–47.) Had Mizuho not made this decision, it would have learned—once Mt. Gox submitted the withdrawal request to Mizuho—that Babiak was a Mt. Gox customer in a contractual relationship with Mt. Gox. (*Id*. ¶¶ 45–47.) Mizuho cannot hide behind its own efforts to avoid learning readily apparent facts.

As such, Babiak sufficiently alleges knowledge.

### B.     *Mizuho Intended to Interfere With Babiak's Contract.*

Mizuho argues that it did not intend to interfere with Babiak's contract because it was merely acting in its self-interest by broadly interfering with the contracts of all Mt. Gox customers. (Mot. at 12.) But this conflates Mizuho's *motive* for interfering with the proper inquiry: the purposefulness of its actions. In Virginia, intent to interfere with a contract is established where an actor knows "the interference is … substantially certain to occur as a result of his action," including

"interference … incidental to the actor's independent purpose and desire." Restatement (Second) of Torts § 766 cmt. *j*; *see also Commerce Funding Corp. v. Worldwide Sec. Servs. Corp.*, 249 F.3d 204, 212 (4th Cir. 2001) (applying Restatement (Second) standard for intent to Virginia tortious interference claim).

Here, Babiak alleges that Mizuho stopped processing withdrawals from Mt. Gox, and undeniably understood—and indeed, intended—that this would prevent Mt. Gox from fulfilling its promise to process users' withdrawals. (Compl. ¶¶ 23–25.) Babiak made three withdrawal requests that went unfulfilled as a result of Mizuho's actions. (*Id*. ¶¶ 44–45.) Thus, the Complaint alleges that the "substantially certain" result of Mizuho's conduct was Mt. Gox's breach of its contract with Babiak. Restatement (Second) of Torts § 766 cmt. *j*.

### C.    *Mizuho's Stopping Withdrawals Caused a Breach of Contract, Injuring Babiak.*

Next, Mizuho argues that Babiak fails to allege that Mizuho's unilateral halting of withdrawals caused Babiak injury. (Mot. at 13-14.) To satisfy the causation element, Babiak must allege that Mizuho induced or caused Mt. Gox's breach of contract, or was—at minimum—a substantial factor in causing Mt. Gox's breach of contract. Restatement (Second) of Torts § 766 cmt. *o* (question of causation of harm is whether "actor did in fact induce the third person's" breach); *OpenRisk, LLC v. Microstrategy Servs. Corp.*, 876 F.3d 518, 529 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 1575 (2018) (same); *Commerce Funding Corp.*, 249 F.3d at 213 (party's conduct being a "substantial factor" in breach of contract supports causation in Virginia tortious interference claim). To satisfy the damages requirement, Plaintiff must allege some actual loss stemming from Mizuho's interference. Restatement (Second) of Torts § 774A (damages in tortious interference claims include any pecuniary and "consequential losses" caused by the interference); *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Corp.*, 65 F.3d 1113,

1124 (4th Cir. 1995) (same, applying Virginia law). Babiak's allegations easily satisfy both requirements.

Babiak alleges that he was harmed by Mizuho's unilateral decision to stop processing withdrawal requests for Mt. Gox. (Compl. ¶¶ 43–49). As a result, Babiak's three requests to withdraw $2,500—requests that, but for Mizuho's conduct, would have been routinely processed—went unfulfilled. When the exchange shut down, Babiak lost his deposited funds specifically because Mizuho did not process the withdrawals, making Mizuho's inducement of Mt. Gox's breach the proximate cause of (or at least a "substantial factor" in) Babiak's loss. *Commerce Funding Corp.*, 249 F.3d at 213; Restatement (Second) of Torts § 766 cmt. *o.*

Mizuho believes Babiak has pleaded himself out of court by alleging that Mt. Gox founder Mark Karpeles's conduct was an additional cause of his losses (a contention already rejected by the court in *Greene*). (Mot. at 13; *Greene*, 206 F. Supp. 3d at 1371.) But the affirmative defense of superseding cause is usually not appropriate for resolution on a motion to dismiss. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) ("relatively rare" case of assessing affirmative defense on 12(b)(6) motion only appropriate if "all facts necessary" to the defense "clearly appear" on complaint's face) (internal quotation omitted). Second, intentional tortfeasors' liability extends to any foreseeable and proximate consequence of their conduct—*any* actor who substantially contributes to a plaintiff's harm is liable for it. Restatement (Second) of Torts § 433B(2). As the *Greene* court found, Mizuho's argument speaks to remedy (that is, who is *more* liable for Babiak's injury), not whether Mizuho can be liable at all. *Greene*, 206 F. Supp. 3d at 1376 (allegation that Karpeles acted fraudulently "does not undermine the allegations against Mizuho" because "Plaintiffs seek to hold Mizuho liable for its own"

conduct).[5] Even if the Complaint suggests shared liability between Karpeles and Mizuho, it does not disclose "all necessary facts for [Mizuho] to prevail" because it does not altogether rule out the possibility of Mizuho's liability. *Leichling v. Honeywell Int'l, Inc.*, 842 F.3d 848, 850-51 (4th Cir. 2016). As such, this potential affirmative defense does not bar Babiak's claim at this stage of the case.

Babiak has alleged injury as a result of Mizuho's conduct, and thus alleges all four of the traditional elements of a tortious interference claim.

### D.   *Mizuho's Conduct Was Unjustified.*

Finally, Mizuho argues that Babiak fails to allege that Mizuho employed improper methods in interfering with his contract with Mt. Gox. (Mot. at 14.) Improper methods of inducing another party to breach their contract need not be "illegal," *id.*, and need not be employed with malice, Restatement (Second) of Torts § 766 cmt. *s*. Methods may be improper where they are "independently tortious," involve "fraud, misrepresentation or deceit, … breach of a fiduciary relationship," "violate an established standard of a trade or profession," "involve unethical conduct," or utilize "sharp dealing." *Dunn, McCormack & MacPherson*, 708 S.E.2d at 870.

For at least three reasons, the Complaint adequately alleges that Mizuho used improper methods in refusing to process Babiak's wire transfer multiple times. First, Mizuho's active concealment of its refusal to process wire transfers for Mt. Gox customers while continuing to accept deposits was independently tortious. As two courts have held, Mizuho's conduct stated a claim for fraud by omission. Ex. D, *Lack*, No. 2:18-cv-00617-RGK-GJS, dkt. 51, at 8; *Greene*, 206 F. Supp. 3d at 1377. Second, when Mizuho—acting as an agent of Mt. Gox for purposes of

---

[5]     In a footnote, Mizuho claims that other banks could have stepped into Mizuho's shoes, an argument based on material outside the Complaint. This also raises an affirmative defense inappropriate for consideration on a motion to dismiss. *Gomez*, 446 U.S. at 640.

Babiak's contract—chose to unilaterally refuse to process withdrawals, it "act[ed] outside the scope of [its] employment in tortuously interfering with" the contract, making its methods of interference inherently improper. *Storey v. Patient First Corp.*, 207 F. Supp. 2d 431, 448 (E.D. Va. 2002). Third, Mizuho's activities violated core business ethics and customs, were unethical, and constituted sharp dealing. As the *Greene* court observed (and as common sense dictates), an investment platform with no means of withdrawing the funds deposited is functionally worthless to an investor. *Greene*, 206 F. Supp. 3d at 1375. Society has a strong interest in protecting these types of contractual relationships, as they are a cornerstone of the "rules of the game" for exchanges like Mt. Gox. Were banks able to hold investments on an exchange for consumers while arbitrarily refusing to process withdrawal requests, the trust required for functioning markets would evaporate, because investors would have no guarantee of ever recovering their investments. This makes Mizuho's method of interfering with Babiak's contract improper.

For its part, Mizuho only says that its halting of withdrawals was justified because its desire to protect itself from regulatory scrutiny was a legitimate business concern. (Mot. at 14 (citing Compl. ¶¶ 21–22).) First, this argument ignores the fact that Mizuho did not just stop processing withdrawals, but continued to accept deposits in order to collect the attendant fees—a solely profit-motivated concern untethered to a broader business interest. (Compl. ¶ 26.) But even assuming that self-protection was Mizuho's sole *motive* does not address whether Mizuho's actions, and the means by which it interfered with contracts like Babiak's, were still improper. For instance, Mizuho could have withdrawn from its agreement with Mt. Gox (rather than cause the exchange to breach its own agreement with users), or even taken its actions in plain, public view. Instead, Mizuho secretly refused to continue processing wire transfers for users (for the purposes of inducing Mt. Gox to terminate its relationship with the bank) and actively concealed this fact from

18

scrutiny. (Compl. ¶¶ 23–24, 27–33, 61.) This means of inducing another party's breach of contract is a form of disfavored "sharp dealing"—in addition to being fraudulent and unethical—that was wholly improper, under the circumstances. *Dunn, McCormack & MacPherson*, 708 S.E.2d at 870.

As such, Babiak sufficiently alleges that Mizuho's methods of inducing Mt. Gox's breach of contract were improper.

## CONCLUSION

For the reasons stated above, the Court should deny Mizuho's motion to dismiss in its entirety.

Dated: August 17, 2018

Respectfully submitted,

/s/ *Robert O. Wilson*
Robert O. Wilson (VSB No. #77791)
Rosalee B.C. Thomas
**FINKELSTEIN THOMPSON LLP**
3201 New Mexico Avenue, NW, Suite 395
Washington, DC  20016
Tel: (202) 337-8000
Fax: (202) 337-8090
rwilson@finkelsteinthompson.com
rbcthomas@finkelsteinthompson.com

J. Aaron Lawson
(*pro hac vice* motion pending)
**EDELSON PC**
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9495
alawson@edelson.com

*Attorneys for Plaintiff and the Putative Class*