**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

SCOTT BABIAK, individually and on behalf of all others similarly situated,

    *Plaintiff*,

v.

MIZUHO BANK, LTD.,

    *Defendants*.

Case No. 1:18-cv-352-LO/JFA

**DEFENDANT MIZUHO BANK, LTD.'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| PRELIMINARY STATEMENT | | 1 |
| ARGUMENT | | 3 |
| I. | The Court Lacks Personal Jurisdiction Over Mizuho | 3 |
| II. | The Complaint Fails To State A Claim For Tortious Interference | 9 |
| | A. Babiak Has Not Alleged That Mizuho Knew About His Contract With Mt. Gox | 9 |
| | B. Babiak Has Not Alleged That Mizuho Intended To Induce Or Cause Mt. Gox To Breach Its Contract With Babiak | 11 |
| | C. Babiak Has Not Alleged That He Suffered Damages Resulting From Mizuho's Conduct | 12 |
| | D. Babiak Has Not Alleged That Mizuho's Conduct Was Improper | 13 |
| CONCLUSION | | 15 |

# TABLE OF AUTHORITIES

Page

**Cases**

*Adams v. Bain*, 697 F.2d 1213 (4th Cir. 1982) ...................................................................2

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
 751 F.3d 796 (7th Cir. 2014) .............................................................................................7

*Alliance Tech. Grp., LLC v. Achieve 1, LLC*, 2013 WL 143500
 (E.D. Va. Jan. 11, 2013)...................................................................................................10

*Baradell v. Bd. of Soc. Servs. Pittsylvania Cnty.*,
 970 F. Supp. 489 (W.D. Va. 1997) ....................................................................................2

*Carefirst of Maryland v. Carefirst Pregnancy Ctrs., Inc.*,
 334 F.3d 390 (4th Cir. 2003) .............................................................................................8

*Consulting Eng'rs Corp. v. Geometric Ltd.*,
 561 F.3d 273 (4th Cir. 2009) .............................................................................................6

*ESAB Group, Inc. v. Centricut, Inc.*,
 126 F.3d 617 (4th Cir. 1997) .............................................................................................7

*Greene v. Mizuho Bank, Ltd.*,
 169 F. Supp. 3d 855 (N.D. Ill. 2016) ..............................................................................8, 9

*Greene v. Mizuho Bank, Ltd.*,
 2018 WL 2735112 (N.D. Ill. June 7, 2018)......................................................3, 11, 12, 14

*Mid-Continent Tel Corp. v. Home Tel. Co.*,
 319 F. Supp. 1176 (N.D. Miss. 1970)...............................................................................10

*Pennsylvania by Shapiro v. Think Fin., Inc.*,
 2018 WL 637656 (E.D. Pa. Jan. 31, 2018) .....................................................................5, 6

*Prudential Real Estate Affiliates, Inc. v. Long & Foster Real Estate, Inc.*,
 208 F.3d 210 (4th Cir. 2000) .............................................................................................9

*Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617 (E.D. Pa. 2014) ........................10

*Tazewell Oil Co. v. United Va. Bank/Crestar Bank*,
 413 S.E.2d 611 (Va. 1992)...............................................................................................10

*Walden v. Fiore*, 51 U.S. 277 (2014) ...............................................................................6, 7

# PRELIMINARY STATEMENT

In our opening brief, we showed that Mizuho[1] is not subject to personal jurisdiction because all of Mizuho's claims-related activities occurred in Japan and the Complaint does not and cannot allege that Mizuho committed any intentional act expressly aimed at Virginia. We also showed that Babiak fails to state a claim because he does not plausibly allege that Mizuho (1) knew that Babiak had a contract with Mt. Gox or that he was even a Mt. Gox user at any time prior to his filing suit; (2) intentionally interfered with that contract; (3) caused the losses that Babiak allegedly suffered – losses that Babiak has attributed to the "gross negligence or outright theft" of Mt. Gox's CEO, Mark Karpeles (Compl. ¶ 1); or (4) used improper means to induce a breach of Babiak's contract with Mt. Gox.

Babiak seeks to stave off dismissal by arguing that Mizuho acted purposefully towards Virginia and targeted his contractual relationship with Mt. Gox as part of a "larger scheme to interfere with the contracts between Mt. Gox and its customers in the United States." Opp. at 8. That argument cannot be squared with the factual allegations of Babiak's Complaint. The Complaint clearly states that Mizuho's decision in June 2013 to terminate outbound wire transfer services for Mt. Gox was precipitated by news reports that Mt. Gox was under investigation by regulatory authorities for illegal activities. Moreover, the Complaint and other public sources that the Court may consider on this motion[2] make clear that Mt. Gox users knew that Mt. Gox

---

[1] Capitalized terms not defined herein have the meanings stated in Defendant Mizuho Bank Ltd.'s Memorandum of Law in Support of its Motion to Dismiss the Complaint ("Br.").

[2] Contrary to Babiak's contention (Plaintiff's Opposition to Defendant's Motion to Dismiss the Complaint ("Opp.") at 11 n.4), the Court may take judicial notice of the contents of the documents attached to the Fortinsky Declaration submitted with Mizuho's motion without converting this motion into a motion for summary judgment. Those news reports and web postings are offered solely for the purpose of demonstrating that the information they contain was in the public realm at the time, not that the content was actually true. *See* Br. n.1 (citing cases). In any event, the Court may consider such documents for purposes of the motion to

was experiencing substantial delays in processing its users' fiat currency withdrawal requests as of June 2013, and Mt. Gox continued to update its users about the status of those delays. In short, none of the factual allegations of the Complaint support Babiak's conjecture that Mizuho's decision to stop providing outbound wire transfer services to Mt. Gox was targeted at him in Virginia, or designed to interfere with his contract with Mt. Gox, the existence of which was unknown to Mizuho. Indeed, the Complaint does not and cannot even allege that Mizuho knew Babiak was a Mt. Gox user or knew that he made any withdrawal requests to Mt. Gox at any time prior to the commencement of this suit. *See* Imaizumi Decl. ¶ 8. Without those critical factual allegations, the Court cannot conclude (as it must in order to find that it has personal jurisdiction here) that Mizuho specifically targeted its conduct at Babiak in Virginia, and cannot find (as it must in order to conclude that Babiak has stated a claim) that Babiak has pleaded that Mizuho knew of or intentionally interfered with his contract with Mt. Gox. Clearly, Mizuho could not have targeted its conduct at an individual it did not know nor could it have interfered with that unknown individual's unknown contractual relationship with Mt. Gox.

Moreover, Babiak's unsupported assertions that Mizuho schemed to interfere with Mt. Gox's contracts with its customers in the United States (Opp. at 8) and that "[i]f Babiak had been one of Mt. Gox's Japanese customers . . . Mizuho would not have targeted his contract" (*id*. at 9 n.2) are purely fictitious. Aside from the fact that the plaintiff has not alleged facts showing that Mizuho's conduct was targeted at anyone other than its customer, Mt. Gox, Mizuho's suspension of outbound wire transfer services from Mt. Gox's accounts applied equally to wire transfers

---

dismiss for lack of personal jurisdiction. *See Baradell v. Bd. of Soc. Servs. Pittsylvania Cnty.*, 970 F. Supp. 489, 492 (W.D. Va. 1997) ("Where jurisdictional defenses are asserted, matters outside the pleadings may be considered.") (citing *Adams v. Bain*, 697 F.2d 1213 (4th Cir. 1982)).

within Japan and to international destinations. *See* Supplemental Declaration of Yasuo Imaizumi ("Supp. Imaizumi Decl.") ¶ 2.[3]

Babiak accordingly has not alleged facts (1) supporting the exercise of personal jurisdiction over Mizuho or (2) giving rise to a plausible inference that Mizuho tortiously interfered with his contract with Mt. Gox. For either of those independently sufficient reasons, this Court should dismiss the Complaint with prejudice.[4]

**ARGUMENT**

**I.    The Court Lacks Personal Jurisdiction Over Mizuho**

In our opening brief, we showed that Babiak has not alleged and cannot allege facts supporting specific personal jurisdiction over Mizuho. All Mizuho conduct at issue occurred in Japan, and the Complaint fails to allege facts, as opposed to conclusory assertions, showing that any of Mizuho's alleged activity was "purposefully directed" or "expressly aimed" at Virginia

---

[3]   In addition, Babiak's repeated assertion that Mt. Gox could not send money to him and other U.S. customers because of Mizuho's conduct makes no sense because (1) paragraph 51 of the Declaration of Nobuaki Kobayashi, which the plaintiff submitted with his opposition brief as Exhibit B to the Declaration of Robert O. Wilson (the "Wilson Decl."), makes clear that Mt. Gox had accounts at other banks at the time of its collapse, and so – if it really wanted to send funds to Babiak – could have wired funds to him through those other banks (or, of course, sent him a check); and (2) the federal judge who has reviewed the evidence presented by both the plaintiff's counsel and Mizuho's counsel in the Illinois case found that "[f]rom June 2013 until February 2014, when Mt. Gox ceased operations and declared bankruptcy, Mt. Gox account holders in the United States could withdraw fiat currency using other intermediaries." *Greene v. Mizuho Bank, Ltd.*, 2018 WL 2735112, at *2 (N.D. Ill. June 7, 2018).

[4]   The circumstances surrounding the commencement of this case further suggest its lack of merit. Babiak's suit was filed in 2018, four years after the collapse of Mt. Gox, but one day before a Judicial Panel on Multidistrict Litigation ("JPML") hearing on a motion by the plaintiff's counsel (which the JPML ultimately denied) seeking to transfer and consolidate two already-pending cases filed in district courts in California and Pennsylvania with the Illinois Action in the Northern District of Illinois. This case, and two more just like it, were filed by the same counsel in district courts in California and New Mexico at around the same time, apparently for the same tactical purpose: to try to convince the JPML that centralization was necessary because there were so many far-flung cases pending around the country.

3

under controlling Supreme Court and Fourth Circuit law. Indeed, the only link between Babiak's claim and Virginia is the fact that Babiak lives in Virginia and alleges he suffered foreseeable injury there. Under Supreme Court and Fourth Circuit precedent, these bare allegations do not provide a sufficient basis for personal jurisdiction. *See* Br. at 7-8. We also showed that the District Court in the related Illinois Action dismissed for lack of personal jurisdiction the very same claim alleged by an Illinois resident based on almost identical facts and allegations. *Id*. at 9.

Babiak tries to avoid the same conclusion by arguing that "Mizuho directed tortious conduct at him based on his Virginia residency, as part of its larger scheme to interfere with the contracts between Mt. Gox and its customers in the United States." Opp. at 8. But Babiak does not and cannot point to a single factual assertion in the Complaint to support his conclusory statement that Mizuho's supposed "scheme" was directed at Virginia residents. The Complaint clearly alleges that Mizuho wanted to sever its banking relationship with Mt. Gox because of press reports that Mt. Gox was under investigation for illegal activity, including money laundering. *See* Compl. ¶¶ 21-22. Nowhere in the Complaint does Babiak allege that Mizuho's decision to distance itself from Mt. Gox had anything to do with Virginia (or Babiak) or any conduct there. In addition, the Complaint alleges that "in June 2013, Mizuho stopped processing international wire withdrawals for Mt. Gox altogether"—not just withdrawals from Mt. Gox customers in Virginia or the broader United States, but "international[ly]." *Id*. ¶ 24.[5] The notion that Mizuho's desire to terminate its banking relationship with Mt. Gox was somehow purposefully directed or expressly aimed at Virginia is thus inconsistent with the allegations of

---

[5] In fact, Mizuho stopped providing *all* domestic and international outbound wire transfer services to Mt. Gox in June 2013. *See* Supp. Imaizumi Decl. ¶ 2.

4

the Complaint.[6] Moreover, because Mizuho stopped providing *all* outbound wire transfer services to Mt. Gox, domestic and international alike (*see* Supp. Imaizumi Decl. ¶ 2), Babiak's unsupported assertions that Mizuho intentionally targeted Mt. Gox users in the United States and Babiak in Virginia are factually incorrect as well.

Similarly, the Complaint does not support Babiak's assertion in his brief that "Mizuho intentionally acted to prevent Mt. Gox from fulfilling its contract with Babiak, including after he asked Mt. Gox to fulfill a withdrawal request three times." Opp. at 10. According to the Complaint, by the time Babiak made his withdrawal requests to Mt. Gox on August 31, September 1 and 2, 2013, Mizuho had not been accepting outbound wire transfer requests from Mt. Gox for more than two months. Compl. ¶¶ 24, 44-45. And, as noted above, the Complaint does not allege any factual basis to infer that Mizuho knew that Babiak was a Mt. Gox customer, or that Mizuho knew or had any reason to know that he made any withdrawal requests to Mt. Gox after Mizuho stopped accepting withdrawal requests from Mt. Gox. In fact, "*Mizuho had no direct or indirect contact with and no way of knowing the identity or address of any Mt. Gox customer who made a request to Mt. Gox to withdraw currency after June 20, 2013.*" Imaizumi Decl. ¶ 8 (emphasis added). Consequently, Babiak's contentions that "Mizuho did not process [his withdrawal] request *solely* because [of his Virginia] residency" (Opp. at 10) is neither plausible nor reconcilable with the allegations of his Complaint.[7]

---

[6] The Declaration of Nobuaki Kobayashi cited by Babiak (Opp. at 3) states that, at the time of its collapse, Mt. Gox had approximately 50,000 users located outside the United States in addition to its approximately 30,701 customers in the United States. Wilson Decl. Ex. A ¶ 24.

[7] The absence of any factual allegations or evidence to support the existence of a purported scheme designed by Mizuho to target Virginia residents distinguishes this case from *Pennsylvania by Shapiro v. Think Finance, Inc.*, 2018 WL 637656, at *5-6 (E.D. Pa. Jan. 31, 2018), on which Babiak relies. *See* Opp. at 9. In contrast to Babiak's unsupported conjecture, the plaintiff in *Think Finance* presented emails showing that the purpose of a

Babiak's arguments also collapse because they do not satisfy the standards set forth in *Walden v. Fiore*, 51 U.S. 277 (2014). In *Walden*, which also involved an intentional tort claim, the Supreme Court held, consistent with Fourth Circuit precedent (*e.g., Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 280-81 (4th Cir. 2009)), that a defendant's out-of-forum activity is "expressly aimed" at the forum only if "the relationship [between the defendant and the forum] arise[s] out of contacts that the defendant *himself* creates with the forum State," not just "with persons who reside there." *Walden*, 571 U.S. at 284-85 (emphasis in original). Moreover, "the defendant's suit-related conduct must create a *substantial connection* with the forum State." *Id*. (emphasis added). Pursuant to *Walden* and Fourth Circuit cases like *Consulting Engineers*, a plaintiff's residence in the forum and the foreseeability that the plaintiff would suffer harm in the forum, even taken together, are not enough in the absence of specific facts showing a deliberate targeting of the forum state. *Walden*, 571 U.S. at 289; *Consulting Engineers*, 561 F.3d at 280-81.

Despite Babiak's strained attempt to portray his tortious interference claim as expressly aimed at Virginia, Babiak himself is the only connection between Virginia and Mizuho's alleged conduct in Japan. Indeed, Babiak concedes that the tortious interference he alleges was consummated not by virtue of Mizuho's actions but by virtue of his own bitcoin investing, which he conducted in his home state. Opp. at 9. Babiak's tort claim is thus no different from the one in *Walden*, where the Supreme Court held that the effects of the defendant's seizure in Georgia of the plaintiffs' funds were not "tethered to [the forum state] in any meaningful way." *Walden*, 571 U.S. at 290. Even though the *Walden* plaintiffs claimed injury when they sought to

---

    payday loan scheme that was actively designed, implemented and directed by the out-of-state defendants was to target customers in Pennsylvania. 2018 WL 637656, at *5-6. Moreover, if not for the scheme, the defendants would have been prohibited by Pennsylvania usury laws from offering such loans to Pennsylvania consumers. *Id*. at *2.

access their funds while in the forum state (Nevada), the Supreme Court held that the effects of the seizure in Georgia were "not connected to the forum State in a way that makes those effects a proper basis for jurisdiction" because those same effects would have been felt by the plaintiffs in the exact same way regardless of which state they were in when they tried to access the seized funds. *Id*. The same holds true for Babiak and the alleged effects of Mizuho's conduct. Mizuho's alleged conduct therefore was not "expressly aimed" at Virginia and the effects of that conduct are not connected to Virginia in a way that makes them a proper basis for jurisdiction. *Id*.

Moreover, Babiak's jurisdictional theory—that, by allegedly directing its conduct at Mt. Gox users in the United States, Mizuho "expressly aimed" its conduct at Virginia, where it knew Babiak was located—would render a foreign defendant subject to suit in every jurisdiction where the effects of its actions were felt directly or indirectly. Endorsement of Babiak's theory would thus result in a huge expansion of federal jurisdiction. Babiak offers no basis for such an expansion, nor could he offer one consistent with the Supreme Court's reasoning and holding in *Walden*. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801-02 (7th Cir. 2014) (rejecting such a broad theory of "de facto universal jurisdiction" because it "runs counter to the . . . approach the [Supreme] Court . . . reaffirmed as recently as February 2014 in *Walden*"). Indeed, even before *Walden*, the Fourth Circuit in *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625-26 (4th Cir. 1997), emphasized the need for evidence that the defendant "expressly aimed" or directed its conduct toward the forum state and explained that this requirement was not met where the defendant "focused its activities more generally on customers located throughout the United States and Canada without focusing on and targeting [the forum state]." Following its earlier precedent in *ESAB Group*, the Fourth

7

Circuit again confirmed in *Carefirst of Maryland v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 400 (4th Cir. 2003), that in order to satisfy the express aiming test, a plaintiff seeking to sue an out-of-state defendant in Maryland was required to show that the defendant "acted with the 'manifest intent' of targeting Marylanders." The court concluded that by setting up and operating a "generally accessible, semi-interactive Internet website," the defendant did not "direct electronic activity into Maryland with the manifest intent of engaging in business or other interactions within that state in particular," even though the defendant organization accepted a donation from a Maryland resident through its website. *Id*. at 401.[8]

Finally, Babiak's attempt to evade the Illinois district court's holding in *Greene v. Mizuho Bank, Ltd.*, 169 F. Supp. 3d 855 (N.D. Ill. 2016), is also unsuccessful. The Illinois district court dismissed Greene's claim against Mizuho (which, like Babiak's, was for tortious interference with contract) for lack of personal jurisdiction because Greene did not make any deposits into Mt. Gox's account at Mizuho, or pay any transaction fees, and therefore Mizuho had "no transactional contacts with Greene at all." *Greene*, 169 F. Supp. 3d at 865. Babiak attempts to distinguish his own case by saying that "Greene did not even attempt to withdraw fiat currency from Mt. Gox." Opp. at 11. But whether or not Greene attempted to withdraw money from Mt. Gox was irrelevant to the Illinois court's determination that Mizuho had "no transactional contacts with Greene at all." *Greene*, 169 F. Supp. 3d at 865. Indeed, the *Greene* court said nothing about whether Greene attempted to withdraw fiat currency from Mt. Gox or

---

[8] The cases Babiak cites to support his assertion that conduct "directed at users in other states does not detract from the Court's analysis of [Mizuho's] contacts with Virginia" (Opp. at 10 n.3) are inapposite and not binding on this Court. Those cases, unlike this one, involved the exercise of personal jurisdiction under the "stream of commerce" theory based on the defendants' sales of products or provision of services in the forum state, which gave rise to the claims at issue in those cases. Here, Babiak has not alleged and cannot allege that Mizuho sold any products or services to him or any other in-state residents, let alone assert a claim based on such non-existent sales or services.

8

whether that would give rise to transactional contacts with Mizuho; instead the court contrasted Greene with another plaintiff who allegedly sent wire transfers to Mizuho. *Id*. As discussed above, Mizuho stopped accepting outgoing wire transfer requests from Mt. Gox weeks before Babiak made his unsuccessful attempts to withdraw money. Babiak's request to Mt. Gox to withdraw money could not have resulted in, and did not result in, any "transactional contacts" with Mizuho, just as Greene's transaction did not result in any contacts with Mizuho either. In short, there is no factual basis on which to distinguish Babiak's claim against Mizuho from Greene's claim against Mizuho. Just as Greene's claim was dismissed for lack of personal jurisdiction, Babiak's claim should be dismissed as well.

## II. The Complaint Fails To State A Claim For Tortious Interference

As shown in our opening brief, Babiak also fails to plead a valid claim for tortious interference. His attempt to do so is missing four essential pieces: he does not plead that Mizuho (1) knew about his contract with Mt. Gox, (2) acted with intent to disturb that contract (indeed, Mizuho could not possibly intend to disturb a contract it did not know existed), (3) caused the damages Babiak claims he suffered, or (4) engaged in improper conduct. His failure to plead any one of these four pieces would be a sufficient basis to grant the motion to dismiss.

### A. Babiak Has Not Alleged That Mizuho Knew About His Contract With Mt. Gox

Babiak concedes that an essential prerequisite for his tortious interference claim is Mizuho's "awareness" of his contract with Mt. Gox. Opp. at 12. Relying almost exclusively on non-controlling authority from outside Virginia,[9] and entirely ignoring the Virginia law cited in

---

[9] Babiak relies on the Restatement generally, an unpublished Fourth Circuit case applying Maryland law (*Prudential Real Estate Affiliates, Inc. v. Long & Foster Real Estate, Inc.*, 208 F.3d 210 (4th Cir. 2000)), a Pennsylvania district court case applying Pennsylvania law

9

our opening brief (Br. at 11), Babiak claims his complaint satisfies this requirement because it alleges that Mizuho "had reason to know (and should have known) about Babiak's contract with Mt. Gox." Opp. at 13. That claim is incorrect.

According to Babiak, Mizuho "had reason to know (and should have known) about Babiak's contract with Mt. Gox" based on Mizuho's general knowledge about Mt. Gox's business and the services Mt. Gox provided to its users. Opp. at 13. Babiak's standard is inconsistent with Virginia law. A plaintiff cannot satisfy the knowledge element by arguing that the defendant "should have known" of the contract without factual allegations giving rise to a reasonable inference that the defendant knew of the plaintiff's contract and the specific term(s) that were the subject of the alleged interference. *See Alliance Tech. Grp., LLC v. Achieve 1, LLC*, 2013 WL 143500, at *7 (E.D. Va. Jan. 11, 2013). Even if Mizuho had general knowledge that Mt. Gox might have "terms of use" that would govern the relationship between Mt. Gox and its customers, the Complaint provides no basis on which to conclude that Mizuho knew that Babiak was a Mt. Gox user or knew the terms of the contract between Babiak and Mt. Gox. Thus, Babiak's suggestion that Mizuho was "willfully blind" or "avoided learning about Babiak's individual contract . . . because of its unilateral and intentional decision to stop processing withdrawal requests altogether" (Opp. at 14) is absurd and illogical.[10]

---

(*Synthes, Inc. v. Emerge Medical, Inc.*, 25 F. Supp. 3d 617 (E.D. Pa. 2014)), a Mississippi district court case applying Mississippi law (*Mid-Continent Tel Corp. v. Home Tel. Co.*, 319 F. Supp. 1176 (N.D. Miss. 1970)), and a dissenting opinion in a single Virginia case (*Tazewell Oil Co. v. United Virginia Bank/Crestar Bank*, 413 S.E.2d 611 (Va. 1992)).

[10] Moreover, as noted above, Babiak does not cite any Virginia authority finding "willful blindness" sufficient to support a tortious interference claim under Virginia law. Furthermore, in *Synthes*, cited by Babiak (Opp. at 14), the district court, applying Pennsylvania law, declined to assume that the defendant knew about the restrictive provisions of one individual's non-competition agreement simply because the defendant knew that someone else was subject to those provisions. *Synthes*, 25 F. Supp. 3d at 729 n.41.

Babiak's contention that Mizuho would have learned of Babiak's contract with Mt. Gox after Mt. Gox submitted his withdrawal request to Mizuho is baseless speculation. Mizuho did not learn about Babiak when he submitted his withdrawal request and the Complaint does not allege otherwise. Consequently, the Complaint provides no basis to infer that Mizuho knew about Babiak or the terms of Babiak's contract with Mt. Gox.

### B. Babiak Has Not Alleged That Mizuho Intended To Induce Or Cause Mt. Gox To Breach Its Contract With Babiak

Babiak claims that "because of Mizuho's actions Mt. Gox could not transmit the $2,500 to Babiak when he asked for it." Opp. at 1. But, as the plaintiff and his counsel know, and as reflected in the Kobayashi Declaration on which Babiak relies (Wilson Decl., Ex. A ¶ 51), this unsupported statement is not true because Mt. Gox had accounts at other banks and, if it wanted to, could have used those other banks to wire money to Babiak (or, indeed, sent him a check). In fact, the Illinois court, after reviewing the factual evidence related to this dispute, found that "Mt. Gox account holders in the United States could withdraw fiat currency using other intermediaries" even after Mizuho stopped providing those services to Mt. Gox. *Greene v. Mizuho Bank, Ltd.*, 2018 WL 2735112, at *2 (N.D. Ill. June 7, 2018). The Illinois court also explained that Mizuho did not play an exclusive role in sending and receiving wire transfers for Mt. Gox, "as Mt. Gox relied at different points in time on other financial institutions and payment processors, including Japan Post Bank, Dwolla, and OK Pay, to facilitate fiat currency deposits and withdrawals." *Id*. This finding is consistent with the Kobayashi Declaration (on which Babiak relies (Opp. at 3)), which explicitly states that Mt. Gox had accounts at various banks. Wilson Decl., Ex. A ¶ 51. Babiak provides no basis to infer that Mizuho knew that Mt. Gox would not use its other banks to satisfy its users' withdrawal requests after Mizuho stopped its outbound wire services. Accordingly, even if, as Babiak contends (Opp. at 14-15), Virginia's

11

intent requirement could be satisfied by pleading that breach of the contract was "substantially certain to occur" as a result of the defendant's conduct, Babiak has not pleaded facts to support any such inference here.

### C. Babiak Has Not Alleged That He Suffered Damages Resulting From Mizuho's Conduct

In our opening brief, we identified at least two reasons why Babiak has not pleaded actual damages resulting from Mizuho's conduct: (1) Babiak alleges his losses were caused by Karpeles's "gross negligence and outright theft," and (2) Mt. Gox could have used other banks to fulfill its users' withdrawal requests. Br. at 13-14. Babiak's arguments in response are unpersuasive and fail to save his claim.

*First*, Babiak's contention that whether Mt. Gox could have used other banks or whether Karpeles caused his alleged losses "speaks to remedy (that is, who is *more* liable for Babiak's injury), not whether Mizuho can be liable at all" (Opp. at 16) is incorrect. The issue of "who is more liable" does not even arise because the allegations of the Complaint do not plausibly allege that Mizuho had anything to do with Mt. Gox's collapse or the loss of its users' funds. Br. at 13-14. Indeed, if Mt. Gox had not collapsed, Babiak would not have suffered any loss. *Second*, the Complaint pleads no plausible basis (and Babiak offers none) why any of Mt. Gox's other banks could not wire money to Mt. Gox's customers (or why Mt. Gox, even if it chose not to wire money, could not send Babiak a check for the funds he sought to withdraw). Indeed, the district court in the *Greene* case has already found that Mt. Gox was able to send funds through other banks after Mizuho stopped providing outbound wire services to Mt. Gox. *Greene*, 2018 WL 2735112, at *2. This finding is further supported by the Declaration of Nobuaki Kobayashi, on which Babiak relies, which states that, as of February 20, 2014, Mt. Gox "maintained 43 accounts at 14 different banks and payment service providers holding funds in various

currencies" and that at the time of Mt. Gox's collapse, Japan Net Bank, Limited, was Mt. Gox's primary bank for its business operations, a role previously filled by Sumitomo Mitsui Banking Corporation and Mizuho. Wilson Decl., Ex. A ¶ 51. Babiak does not allege (nor could he) that there was anything unique or specialized about the wire transfers that Mt. Gox was sending. Even small and less sophisticated banks have the ability to wire funds.

Finally, the Complaint does not allege (nor could it) that Mizuho in any way interfered with or prevented Mt. Gox from sending money to Babiak by using one of its other banks. The fact that Mt. Gox apparently chose not to use one of its other banks was Mt. Gox's decision (perhaps because Mt. Gox, which sought bankruptcy protection in February 2014, was already running out of funds) and had nothing to do with Mizuho. Babiak tries to shift the focus to Mizuho because Mt. Gox and Karpeles are either bankrupt or beyond the reach of this Court's jurisdiction (or both). But Mt. Gox could have sent Babiak the money he sought to withdraw, and he provides no facts to support his conclusory argument that his loss was the result of Mizuho's actions.

### D. Babiak Has Not Alleged That Mizuho's Conduct Was Improper

Finally, Babiak does not deny that, in order to establish tortious interference, he must allege that Mizuho "employed improper methods" because his contract with Mt. Gox was terminable at will. Opp. at 17. Instead, he contends that Mizuho employed "improper methods" because it allegedly concealed its suspension of outbound wire transfer services while continuing to accept deposits, acted outside the scope of its employment as an agent for Mt. Gox, and "violated core business ethics and customs." *Id*. at 17-19. The Complaint provides no factual support for any of these conclusory assertions.

All Mizuho is alleged to have done is to exercise its right to change its relationship with its banking customer. Babiak does not plead any facts that would support any inference that

Mizuho knew that, by doing so, it would in any way be affecting Mt. Gox's customers, let alone preventing them from withdrawing funds from their Mt. Gox accounts. In particular, Babiak does not plead that Mizuho had any reason to believe that Mt. Gox would be unable to fulfill its customers' withdrawal requests by wiring money through other banks. Babiak did not make that allegation because, as plaintiff's counsel knows, and as the Illinois district court recently found, Mt. Gox did, in fact, send money to its U.S. customers using other banks. *Greene*, 2018 WL 2735112, at *2 (from June 2013 until February 2014, "Mt. Gox account holders in the United States could withdraw fiat currency using other intermediaries").

Moreover, Babiak's assertion that Mizuho "secretly refused to continue processing wire transfers for users . . . and actively concealed this fact" (Opp. at 18) is similarly unsupported. Babiak cannot point to a single fact that was concealed. As discussed in our opening brief (at 4), Mt. Gox routinely communicated with its customers about problems on its platform—for example, by posting notices on Mt. Gox's website regarding withdrawal delays. *See* Fortinsky Decl. Exs. 1-6; Compl. ¶ 25. Nor does the Complaint plead any basis to infer that Mizuho was "an agent of Mt. Gox" that "act[ed] outside the scope of [its] employment." Opp. at 17-18. Babiak does not allege what the scope or other terms of Mt. Gox's relationship with Mizuho actually were, and therefore, fails to plead that Mizuho acted outside the scope of that relationship. Finally, Babiak fails to plead any facts showing that Mizuho's conduct in furtherance of a legitimate business interest—according to the Complaint, to break ties with a banking customer that was under criminal investigation for money laundering and other criminal activities—was "unethical" or "sharp dealing." In short, Babiak has not pleaded that Mizuho acted to promote its legitimate business interest by improper means. For that reason, too, Babiak's claim should be dismissed.

## **CONCLUSION**

For all the foregoing reasons, this Court should dismiss the Complaint with prejudice in its entirety.

DATED:   August 23, 2018          Respectfully submitted,

SHEARMAN & STERLING LLP

By:   /s/ Ryan Shores
Ryan Shores (Va. Bar No. 65934)
401 9th Street, NW
Washington, DC 20004
Telephone: (202) 508-8000
ryan.shores@shearman.com

Jerome S. Fortinsky (admitted *pro hac vice*)
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000
Facsimile: (212) 848-7179
jfortinsky@shearman.com

*Counsel for Defendant Mizuho Bank, Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of August, 2018, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to counsel of record.

    /s/ Ryan Shores
Ryan Shores (Va. Bar No. 65934)
SHEARMAN & STERLING LLP
401 9th Street, NW
Washington, DC 20004
Telephone: (202) 508-8000
ryan.shores@shearman.com

*Counsel for Defendant Mizuho Bank Ltd.*