IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SCOTT BABIAK, individually and on behalf of all others similarly situated, ) ) ) ) *Plaintiff*, ) ) v. ) ) MIZUHO BANK, LTD., ) ) *Defendant*. ) ) | Case No. 1:18-cv-352 |

## MEMORANDUM OPINION

Plaintiff, Scott Babiak, filed this putative class action on March 23, 2018. In his Complaint, Plaintiff alleges one count of tortious interference with contract against Defendant, Mizuho Bank. Dkt. No. 1.

This matter comes before the Court on Defendant's Motion to Dismiss for Lack of Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and Defendant's Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 9. For the following reasons, the Court grants Defendant's Motion to Dismiss for Lack of Jurisdiction. Because the Court lacks jurisdiction it declines to consider the Motion to Dismiss for Failure to State a Claim.

### I. Background

This case arises out of the actions that precipitated the collapse of Mt. Gox, an entity which at one point claimed to be "the world's most established bitcoin exchange." Dkt. No. 1 ¶ 8. Mt. Gox was based in Japan but had customers from all over the world. To participate in the exchange, users would first create a Mt. Gox account. *Id.* ¶ 9. Then, to begin trading on the

exchange, users could either deposit bitcoins they already owned by transferring them directly into their Mt. Gox accounts or deposit cash into their Mt. Gox accounts by wiring money to Defendant, Mizuho Bank, a Japanese financial institution. *Id.* ¶ 11. These wire transfers would designate Mt. Gox as the beneficiary, Defendant as beneficiary's bank, and list the user's Mt. Gox account number. *Id.* ¶ 18. Defendant would then transfer the money into the bank account Mt. Gox held with Defendant with a designation of the user's Mt. Gox account number. *Id.* ¶ 11. Finally, Mt. Gox would then transfer the money into the user's Mt. Gox account.

When a user wished to withdraw money from the exchange, he would submit a request through his Mt. Gox account. *Id.* ¶ 19. Mt. Gox would then make a request to Defendant for processing. *Id.* The request would include the user's banking details and the amount to be transferred. *Id.* Defendant would then transfer the requested amount to the user's bank. *Id.*

In 2013, Defendant's relationship with Mt. Gox began to sour. Reports surfaced that U.S. authorities were investigating Mt. Gox for money laundering and so – wishing to avoid regulatory scrutiny and reputational harm – Defendant asked Mt. Gox's CEO, Mark Karpeles, to close Mt. Gox's account with Defendant. *Id.* ¶¶ 21-23. Karpeles refused. *Id.* ¶ 23. Defendant responded by implementing policies that would make it difficult for Mt. Gox to do business with Defendant. *Id.* ¶ 23. Most notably, in June 2013, Defendant stopped processing international wire withdrawals for Mt. Gox. *Id.* ¶ 24.

Defendant's change in policy had near immediate effects on Mt. Gox's users. In June 2013, users began to post online about delays in withdrawing money from their Mt. Gox accounts. *Id.* ¶ 24. Neither Defendant nor Karpeles disclosed the reason for the delays and Defendant continued to accept wire transfers from Mt. Gox users. *Id.* ¶ 26. The backlog of withdrawal requests continued until February 7, 2014, when Karpeles froze users' ability to

withdraw any bitcoins from Mt. Gox. *Id.* ¶ 32. On February 24, 2014, Mt. Gox's website went dark. *Id.* ¶ 32. On February 28, 2014, Mt. Gox filed for bankruptcy in Japan. *Id.* ¶ 35.

Plaintiff, Scott Babiak, is a Virginia citizen who created an account with Mt. Gox in or around May 2013. *Id.* ¶¶ 3, 41. After opening his account, Plaintiff transferred his previously owned bitcoins into it. On August 31, 2013, Plaintiff submitted a withdrawal request to Mt. Gox for $2,500. *Id.* ¶ 44. Plaintiff designated the funds be deposited in his U.S. bank account. *Id.* 44. Plaintiff received an email from Mt. Gox confirming the request. *Id.* After not receiving any funds Plaintiff submitted two more withdrawal requests, one on September 1, 2013, and the other on September 2, 2013. *Id.* ¶ 43. Again Plaintiff received confirmation emails but no funds. *Id.* A month later, on October 1, 2013, Plaintiff received a message from Mt. Gox customer support notifying him that all international withdrawals were delayed. *Id.* ¶ 46. Plaintiff received no other communications from Mt. Gox before the website went dark in February 2014 and never received the $2,500 he requested.

Plaintiff alleges Defendant's decision to halt international withdrawals amounts to tortious interference with contract. Plaintiff seeks to certify a class of similarly situated individuals to pursue this action.

## II. Legal Standard

It is plaintiff's burden to demonstrate personal jurisdiction at every stage after a defendant raises a challenge under Rule 12(b)(2). *Grayson v. Anderson*, 816 F. 3d 262, 267 (4th Cir. 2016). When the court is considering a personal jurisdiction challenge "by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint" the plaintiff need only make a prima facie showing of personal jurisdiction. *Id.* at 268. In examining the 12(b)(2) challenge the court must consider all

allegations and facts in the light most favorable to the plaintiff. *Id.*

### III. Analysis

A federal court has personal jurisdiction over a non-resident defendant if (1) the forum state's long-arm statute authorizes personal jurisdiction over the non-resident defendant, and (2) personal jurisdiction over the non-resident defendant comports with the due process clause. In Virginia, "the statutory inquiry merges with the constitutional inquiry" as Virginia's long-arm statute authorizes personal jurisdiction "to the extent permissible under the constitution." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F. 3d 273, 277 (4th Cir. 2009).

The constitutional analysis for personal jurisdiction requires the defendant to "have sufficient 'minimum contacts' with the forum state such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). These minimum contacts must have been enough so "that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The contacts cannot simply be "random, fortuitous, or attenuated," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (first quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984), then quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 299), and cannot be the "unilateral activity of another party or a third person." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

The Fourth Circuit has described the due process inquiry as a three part test in which courts consider: "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be

constitutionally 'reasonable.'" *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

### A. Mizuho did not purposefully avail itself of the privilege of conducting activities in Virginia.

The Fourth Circuit has articulated a nonexclusive list of factors that are helpful in determining whether a non-resident business has availed itself of the privilege of conducting activities in the forum state. In this analysis the Fourth Circuit considers whether the defendant business "maintains offices or agents in the forum state;" "owns property in the forum state;" "reached into the forum state to solicit or initiate business;" "deliberately engaged in significant or long-term business activities in the forum state;" or 'made in-person contact with the resident of the forum in the forum state regarding the business relationship." *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016) (quoting *Consulting Eng'rs Corp.*, 561 F. 3d at 278). The Fourth Circuit also evaluates "whether the parties contractually agreed that the law of the forum state would govern disputes;" "whether the performance of contractual duties was to occur within the forum;" and "the nature, quality and extent of the parties' communications about the business being transacted." *Id.*

Here, Defendant has no offices or agents in Virginia. It does not own property in Virginia. It did not reach into Virginia to solicit or initiate business. If anything, Virginians reached out to Defendant to solicit or initiate business by wiring money from their U.S. banks to Defendant. Defendant did not deliberately engage in significant or long-term business activities in Virginia. Instead, all of Defendant's actions took place in Japan. Defendant never made in person contact with a Virginian regarding Mt. Gox. Defendant never entered into a contract with a Virginian regarding this matter, much less a contract that specified that contractual duties were to be performed in Virginia.

Finally, the extent of the Defendant's contacts with any Virginians were slight. At most, a Virginian would wire money to Defendant. After that, all interactions were between Defendant and Mt. Gox. When a user wished to withdraw money, he did not contact Defendant. Instead, he would make a request to Mt. Gox and then Mt. Gox would make a request for Defendant to wire funds to the user. None of the factors articulated by the Fourth Circuit cut toward this Court exercising personal jurisdiction in this case.

To further understand the personal jurisdiction inquiry it is instructive to examine this case's sister cases: one from the Northern District of Illinois, *Greene v. Mizuho Bank, Ltd.*, 169 F. Supp. 3d 855 (N.D. Ill. 2016), and one from the Eastern District of Pennsylvania, *Pearce v. Mizuho Bank, Ltd.*, 2018 WL 4094812 (E.D. Pa. Aug. 27, 2018). Both cases arise out of the same facts and make similar allegations against the same Defendant as the present case.

*Greene* involved two plaintiffs: Greene and Lack. Greene was an Illinois resident who traded and sold bitcoins on the Mt. Gox exchange. *Greene*, 169 F. Supp. at 858. Lack was a California resident who wired $40,000 to Defendant for Defendant to deposit in Mt. Gox's bank account (and which would then be transferred to Lack's Mt. Gox account). *Id.* at 859.

The Northern District of Illinois held Defendant's interactions with Lack were enough to establish minimum contacts. This is because Defendant became aware of Lack's California address when it received the wire transfer, it accepted the wire transfer, and it earned a service fee off the wire transfer. *Id.* at 861-62. Nonetheless, the court dismissed Lack's complaint because while it would satisfy personal jurisdiction over Defendant in Lack's home state of California, it did not satisfy personal jurisdiction over Defendant in Illinois. *Id.*

The Northern District of Illinois also dismissed Greene's claim, citing lack of personal jurisdiction. The court emphasized that there were no allegations that Greene sent wire transfers

to Defendant and no allegations that Defendant collected any transaction fees off Greene. *Id.* at 865. Further, the court stated:

> Mizuho had no transactional contacts with Greene of the type that it had with Lack; in fact it had no transactional contacts with Greene at all. The alleged harm to Greene is Mizuho's only contact with Illinois, and that harm is insufficient to establish personal jurisdiction, as "mere injury to a forum resident is not a sufficient connection to the forum."

*Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 290 (2014)).

The Eastern District of Pennsylvania held it had no personal jurisdiction over Defendant in a case with a plaintiff in a nearly identical factual scenario as Plaintiff in this case. In *Pearce*, the plaintiff, Pearce, created a Mt. Gox account and transferred bitcoins into it. *Pearce*, 2018 WL 4094812 at *2. Pearce submitted a withdrawal account to Mt. Gox in the amount of $5,900. *Id.* Pearce received a confirmation email from Mt. Gox. *Id.* Later, never having received the requested funds, Pearce received an email from Mt. Gox customer support informing him that all international withdrawals were delayed. *Id.* Pearce attempted to cancel his withdrawal request, convert the $5,900 back into bitcoin, and withdraw his bitcoin balance from Mt. Gox. *Id.* This was unsuccessful and then Mt. Gox went dark. *Id.*

In its reasoning, the Eastern District of Pennsylvania emphasized that Defendant did not deliberately target the forum state. Pearce – as does Plaintiff in this case – argued that Defendant decided to tortuously interfere with Pearce's contract with Mt. Gox precisely because Pearce was a resident of Pennsylvania. *Id.* at *5. Under Pearce's theory, Defendant wished to put pressure on Mt. Gox to close its account and knew the best way to do that would be to threaten Mt. Gox's business with American users. Pearce claimed that his Pennsylvania citizenship was critical to Defendant's actions because it was a proxy for his American citizenship. Therefore, Pearce argued, Defendant purposely availed itself of the forum state because interfering with American

contracts was its ultimate goal.

The court was not persuaded by this argument. Importantly, the court emphasized Defendant "never engaged in any transactional contact with Pearce." *Id.* Further, "the alleged act at the heart of Pearce's claim is a negative action. By not fulfilling the withdrawal request, Mizuho failed to direct any activity at Pennsylvania." *Id.* For these reasons the court held it lacked personal jurisdiction.

Significantly, here Plaintiff does not allege any facts that make his situation more similar to Lack's, in which the court found there could be personal jurisdiction if the case was brought in the proper venue. Unlike Lack, Plaintiff did not wire money to Defendant, thereby alerting Defendant to his existence and citizenship. Instead, Plaintiff, like Pearce and Greene, deposited previously purchased bitcoins directly into his Mt. Gox account. When Plaintiff wished to withdraw funds, Mt. Gox requested the withdrawal from Defendant on Plaintiff's behalf. Like Pearce, Plaintiff never had any contacts or transactions directly with Defendant. Although Plaintiff here attempted three withdrawal requests while Pearce only attempted one, the issue in *Pearce's* personal jurisdiction analysis was not the frequency of withdrawal requests. Instead, the issue was that the action at the heart of the personal jurisdiction inquiry was inaction. This does not change with the number of times Defendant declined to act.

Therefore here, as has been found in other districts, there is no personal jurisdiction. Defendant did not purposely avail itself of the privilege of conducting activities in Virginia. In fact, Defendant conducted no activities in Virginia at all. "[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Walden*, 571 U.S. at 291. Here, Defendant did not create contacts with Virginia. Any contacts with Virginia that arguably exist are of Plaintiff's making. Defendant's inaction is insufficient to establish personal jurisdiction.

*B. Because There Was No Purposeful Availment, the Court Need Not Consider Whether Plaintiff's Claims Arise out of Those Activities Directed at the State or Whether the Exercise of Personal Jurisdiction Would Be Constitutionally Reasonable.*

The Fourth Circuit has clearly stated, "[i]f, and only if, we find that the plaintiff has satisfied this first prong of the test for specific jurisdiction need we move on to a consideration of prongs two and three." *Consulting Eng'rs Corp.*, 561 F.3d at 278. As detailed above, here Plaintiff's claim fails on the first prong. There is no need for the Court to consider prongs two and three.

### III. Conclusion

For the reasons stated and for good cause shown, Defendant's Motion to Dismiss for Lack of Jurisdiction is granted. Because the Court lacks jurisdiction it declines to consider Defendant's Motion to Dismiss for Failure to State a Claim. Plaintiff's claim is dismissed with prejudice. A separate Order shall issue.

September 17, 2018
Alexandria, Virginia

Liam O'Grady
United States District Judge